## LEWIS I. COOK *vs.* THE CITY OF ANSONIA.

Third Judicial District, New Haven, June Term, 1895. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Clauses in a borough charter requiring a detailed estimate of expenditures
for the ensuing year to be submitted by the wardens and burgesses to
each annual meeting for its action, and providing that said borough
officers should not incur any liability or expense, by contract or other-
wise, for which the borough should be responsible, in excess of the
estimate fixed by such meeting, are intended as a protection to its tax-
payers against extravagant and unnecessary expenditures, but should
not be construed so as to absolve the borough from liability for dam-
ages caused by the official acts of its proper officers within the scope of
their express charter powers, as in changing the grade of a street.

The mere fact that an annual borough meeting took no action on the esti-
mates for the next year, does not render work done by order of the
warden and burgesses during that year in the grading of streets, a
usurpation or individual act only, and not the act of the borough.

Evidence that the warden and burgesses voted to establish a certain grade,
that the warden employed men to do the work under the direction of
the borough engineer, that they were regularly paid from the borough
treasury, that the warden and burgesses reported to the next annual
meeting that they had done said work, and that their report was ac-
cepted by the meeting, is admissible to prove that the change of grade
was made by the borough.

It is immaterial, under such circumstances, that the report was not adopted
by formal vote of the warden and burgesses, if it was signed by eight
of the nine members of the board, and accepted by the borough.

The amount of damage done to real estate by a change of grade may be
shown by proving the value of the land just before and after the
change; and in determining that question, evidence of the value of
trees and sidewalks destroyed, and the cost of necessary regrading of
the real estate and of relaying pipes to conform to the altered grade,
is admissible.

The special benefits received by the owner from the change of grade should
be deducted from the damage sustained; but the increased value of the
plaintiff's land, due to private improvements subsequently made by
his neighbors in their property, is not a special benefit available to the
defendant in reduction of the plaintiff's damages.

In a complaint to recover damages resulting from a change of grade, it is
sufficient to set out the specific facts upon which the claim is based,
without alleging, as a conclusion from those facts, that the plaintiff
sustained "special damage."

The complaint alleged that the warden and burgesses of the defendant

borough, in pursuance of its charter powers, voted to change the grade of a certain street and caused the grade to be changed. *Held* that this was a sufficient allegation that the change made was the change of grade voted to be made.

[Submitted on briefs June 5th—decided June 22d, 1895.]

ACTION to recover special damages sustained by the change of grade of a highway in the defendant city; brought to the Court of Common Pleas in New Haven County and tried to the jury, before *Hotchkiss, J.;* verdict and judgment for the plaintiff for $200 damages, and appeal by the defendant for alleged errors in the rulings and charge of the court. The defendant also moved for a new trial for a verdict against evidence, and this motion the trial court overruled. *No error.*

The complaint alleged:—

"1. The plaintiff is the owner of a certain piece of land with dwelling-house and other buildings thereon, situated on Tremont street, a public highway in said city of Ansonia, and bounded and described as follows: northerly, by land of the Ansonia Land and Water Company, 30 feet: easterly, by land of Harriet Cook, 100 feet: southerly, by Tremont street, 30 feet; and westerly, by land of Joseph Gilpin, 100 feet.

"2. On March 23d, 1892, and until December 1st, 1893, said Tremont street was a public highway, within the limits of the borough of Ansonia.

"3. On said March 23d, 1892, the warden and burgesses of said borough of Ansonia at a regular meeting voted to change the grade of said Tremont street, which vote was taken in pursuance of the power given them by the borough charter granted by the legislature of this State.

"4. On or about May 1st, 1892, the said warden and burgesses did cause the grade of said Tremont street to be changed by lowering said street about three feet in front of and adjoining said property of the plaintiff, and did cause to be destroyed a good and sufficient sidewalk in front of said land on said Tremont street, and did cause to be destroyed a large and valuable shade tree standing between the side-

walk and the wrought part of the highway in front of said land on said Tremont street. By reason of such change of grade the plaintiff was compelled to change and did change the grade of his said land to conform to the new grade of said Tremont street; also, to relay and did relay water pipes running from said street to said dwelling-house, all of which has caused the plaintiff to suffer great expense and damage.

"5. On December 1st, 1893, the said borough of Ansonia became merged into the city of Ansonia by virtue of the charter of the city of Ansonia, Special Acts 1893, page 938, sec. 16, which charter provides that all the rights and liabilities of said borough of Ansonia shall be assumed by said city of Ansonia, and that said borough of Ansonia shall transfer all its rights and liabilities to said city of Ansonia.

"6. The plaintiff has never received any notice of a hearing on the assessment of damages and benefits by reason of such change of grade, and in fact no provision has been made by either the borough or the said city of Ansonia for the assessment of damages and benefits.

"7. The borough of Ansonia has never paid the plaintiff for said damage, neither has the said city of Ansonia paid the plaintiff said damage."

The defendant demurred to the complaint for the following reasons :—

"1. Because upon the allegations contained in said complaint no cause of action is shown to exist against the defendant.

"2. Because it is not alleged, nor does it appear from any of the allegations contained in said complaint, that the warden and burgesses of the borough of Ansonia ever passed any vote, order, resolution or ordinance authorizing or directing in any way the change of grade of said Tremont street, pursuant to and in accordance with the charter of said borough.

"3. Because it is not alleged, nor does it appear from any of the allegations contained in said complaint, that the change of grade of said Tremont street (described in paragraph 4 of said complaint) was made under the direction or pursuant

to any vote, order, resolution or ordinance of any kind passed by said warden and burgesses at a meeting held by them.

" 4. Because it does not appear from the allegations contained in paragraph 4 of said complaint in what way or manner or under or by what authority said warden and burgesses caused the grade of said Tremont street to be changed.

" 5. Because it is not alleged nor does it appear that the change of grade of said Tremont street was made so as to correspond to the grade already established by said warden and burgesses of said borough of Ansonia, on the 23d of March, 1892, as alleged in paragraph 3 of said complaint.

" 6. Because it is not alleged nor does it appear from any of the allegations contained in said complaint that the plaintiff has sustained any special damage by reason of the change of grade of said Tremont street." The demurrer was overruled. The defendant then answered as follows :—

"*First Defense.* 1. The defendant denies the truth of the matters alleged in the following paragraphs of the plaintiff's amended complaint, to wit: paragraphs 1, 3, 4 and 5.

" 2. The defendant admits the truth of the matters alleged in paragraphs 2, 6 and 7.

"*Second Defense.* 1. On the 22d day of December, 1891, the then warden and burgesses of the borough of Ansonia in accordance with the provisions of the charter of said borough submitted to the annual meeting of the freemen of said borough, held at said time, an estimate of the expenditures which would be required for the necessary expenses of supporting and maintaining said borough, and of each department thereof, for the year ending the last day of November, 1892, and which estimate included the sum of $1,500 for the care of the streets of said borough.

" 2. Said warden and burgesses did not submit to said meeting any other estimate for the care, maintenance, repair, change of grade, or other work of any kind upon the streets of said borough for the year ensuing, after the holding of said meeting.

" 3. No action was taken at said annual meeting of said

borough in reference to the estimates submitted, as aforesaid, and the same were not approved by said meeting.

"4. No appropriation of money, nor any vote, order or resolution of any kind was passed at said annual meeting for the care, maintenance, support or repair of the streets situated within said borough, or for work of any kind to be done upon said streets, or for any change of grade of said streets, or for the payment of any damages arising from any such change of grade during the year following said meeting.

"5. No meeting other than said annual meeting of the legal voters or inhabitants of said Ansonia was held during the years 1891 and 1892 at which any action, vote or resolution of any kind was taken or passed relative to the care, maintenance, repair or support of the streets of said borough, or the change of grade, or for the payment of any damages for the change of grade of any of said streets."

The plaintiff demurred to the second defense, and this demurrer was sustained. The jury returned a verdict for the plaintiff to recover $200 damages; and the court rendered judgment for that amount, from which judgment the defendant appealed. The appeal assigns errors in overruling the first, and in sustaining the second, demurrer, in the admission and exclusion of evidence, and in the charge of the court.

*V. Munger*, for the appellant (defendant).

I. The court erred in sustaining the plaintiff's demurrer to the second defense. The language of the charter with regard to expenditures by the borough is mandatory and prohibitory. 10 Special Acts, 598. The warden and burgesses therefore had no power to incur liabilities. *McDonald* v. *Mayor*, 68 N. Y., 24; *Donovan* v. *City of New York*, 33 id., 290; *Whitney* v. *New Haven*, 58 Conn., 461.

II. The court erred in overruling the second reason of the demurrer.

There is no allegation in the complaint, nor does it anywhere appear therefrom, that the warden and burgesses, in causing the grade of Tremont street to be changed, acted as a

body, or that they ever passed any vote or resolution, as such, or that they ever had any meeting at which the question of changing the grade was discussed or decided upon. It is possible for the warden and burgesses, as individuals, to do precisely what was done, and if so, certainly no cause of action was alleged as against the defendant. The borough of Ansonia was not responsible for the individual acts of the warden and burgesses.

It is not alleged in the complaint that the grade actually made was the same as that which was legally established. For aught that appears the grade was entirely different. There is no connection alleged in the complaint between the two acts.

III. The verdict was manifestly against the evidence.

*Earlliss P. Arvine* and *Charles C. Ford*, for the appellee (plaintiff).

I. The decrease in value of premises situated upon the highway was a consequence which inevitably followed from lowering the grade. It was a natural consequence, and is included in general damages. It was not necessary for the plaintiff to itemize his damages. 5 Amer. & Eng. Ency. of Law, 52; *Holley* v. *Torrington*, 63 Conn., 431.

II. It was no error to permit evidence that the officers of the borough were present, and oversaw or directed the work in the change of grade. It was immaterial whether they had the authority to do the work or not, provided the borough afterwards ratified their acts. The plaintiff claimed that there was such a ratification, and offered evidence to prove it, and it was for the jury to say whether or no the borough had ratified the acts or not. 2 Dillon on Mun. Cor., §§ 968, 972; *Thayer* v. *Boston*, 19 Pick., 511. In order to ratify the acts of the warden and burgesses, it was manifestly not necessary for the meeting to know all the details of the work. It was simply necessary to know enough of what had been done to adopt the change.

It is impossible that the meeting could have voted that change of grade without having a presumed knowledge that

Cook *v*. Ansonia.

somebody was entitled to damages, or at least without the knowledge that there was a very great probability that somebody had been damaged. The warden authorized and directed the change of grade to be made, and he, together with all the burgesses, signed and presented to the annual meeting a report that it was so made, and this action validated the change of grade as regards third parties, at least without any action on the part of the annual meeting of the borough. It is enough that the warden and burgesses as such, consented to the change of grade. It was not essential to the plaintiff's right of action that a formal vote to change the grade should appear upon their minutes. *Norwalk Gas Light Co.* v. *Norwalk*, 63 Conn., 519–521.

HAMERSLEY, J. No question is made as to the liability of the city of Ansonia, if the borough before its merger in the city was liable, and for convenience we will treat the borough of Ansonia as the defendant.

This is an action to recover from the defendant damages for changing the grade of a highway, without causing the special damage to the property of the plaintiff, an owner of adjoining land, to be appraised. Two principal questions of law were involved in the trial: one relating to facts by which the authority of the borough for acts done in its behalf may properly be established, and the other to facts that may properly be considered in determining the damage alleged. Those questions were raised by demurrer, by objections to evidence, and by requests to charge. All substantial questions presented by the fifty errors assigned in the appeal may be classed under four heads, and will be disposed of by the conclusions we reach in considering the demurrer to the complaint, the demurrer to the defendant's second defense, the facts which the court below held to be proper evidence to prove authority from the borough for acts done in its behalf, and the facts held proper to be considered in determining the damage to the plaintiff's property.

*First.* The demurrer to the complaint was properly overruled. The complaint alleges damage to the plaintiff, and

sets up specific facts sufficient to support the claim of special damage to his property by reason of the change of grade. It is not necessary to allege, as a conclusion from these facts, that the plaintiff sustained "special damage." *Dann* v. *Woodruff*, 51 Conn., 203. The complaint alleges that the warden and burgesses, in pursuance of the powers given them by the borough charter, voted to change the grade in Tremont street, and did cause the grade to be changed. This sufficiently alleges that the change in grade made was the change voted to be made. The charter, which is a public Act, authorizes the warden and burgesses to work the highway to the grade as established by them. The allegation that they did so work the highway is sufficient, without detailing the evidence of that fact. A denial of the allegation compels the plaintiff to produce evidence of the fact, including the votes and other matters specified in the demurrer, so far as the same may be necessary to prove the fact alleged.

*Second.* The demurrer to the defendant's second defense was properly sustained.

The defense alleges that the warden and burgesses submitted to the annual meeting of the borough an estimate of the expenditure necessary for maintaining the borough during the succeeding year (being the year in which the change of grade was made), including an estimate of $1,500 for the care of the streets ; that no action was taken by said annual meeting in reference to the estimate so submitted; that no appropriation of money for the care etc. of streets, or for work of any kind done upon the streets, or for the payment of damages arising from any change of grade, was made by said meeting ; that no such appropriation was made at any subsequent meeting held prior to the change of grade in question.

The charter (Special Acts of 1887, p. 592) vests in the warden and burgesses the " sole and exclusive authority and control over all streets and highways," and the sole and exclusive power to lay out highways and to order and make all public improvements in highways, including the power

to establish and change the grades.  This power is exclusive in the warden and burgesses, and cannot be exercised by a borough meeting.  The only limitations on the power are found in section 23 of the charter, which provides, among other things, that prior to each annual meeting of the borough, the warden and burgesses shall prepare a detailed and classified estimate of the expenditures of said borough for the ensuing year; that said estimate shall be submitted to the annual meeting "and shall be acted upon by said meeting;" that said meeting may approve the estimates as submitted, or alter the same, and authorize the warden and burgesses to make appropriations to meet said estimates as finally fixed by said meeting, the total amount of such appropriations for any one year not to exceed the estimated income of the borough, and neither the warden and burgesses nor any borough officer to make expenditures except for the purposes specified in the estimates so fixed; that the warden and burgesses shall not incur any liability or expense by contract or otherwise, for which the borough shall be responsible in excess of the estimates so fixed by said meeting.

Does the fact that the borough at its annual meeting disobeyed the law and neglected to take any action on the estimates submitted, divest the warden and burgesses of their powers and duties as fixed by law, so that in the exercise of such powers and duties their acts are the acts of individuals or of mere usurpers, and not the acts of the borough?  The charter does not in terms put such a limit on their powers. It vests in them the main portion of the power granted to the borough; the whole legislative power, and substantially the whole executive power; the borough has no power in relation to streets and highways except as it acts through the warden and burgesses in whom the sole and exclusive power is specifically vested.  Section 23 relates to the expenditure of money, and forbids the warden and burgesses to incur any liability "for which said borough shall be responsible in excess of the estimates so fixed by said meeting."  The money raised by taxation for the support of the borough is subject to the control of the warden and bur-

gesses, and is disbursed upon their order. In this State, the policy of requiring appropriations, more or less specific, for all expenditures of money by municipal governments, is of comparatively recent growth. The body in which the municipal authority is vested may incur such expenses as are necessary to the execution of the powers committed to it, unless restrained by special legislation. Such legislation has generally been regarded as intended to protect taxpayers against extravagant and unnecessary expenditures, and its effect as incidentally affecting the power of the governing body only so far as may be necessary to accomplish that object. *Park Ecclesiastical Society* v. *Hartford*, 47 Conn., 89; *Whitney* v. *New Haven*, 58 id., 450. We do not think that in this case the mere fact that the borough meeting neglected to take any action on the estimates submitted to it, rendered the action of the warden and burgesses in establishing and working the grade as charged in the complaint, the act only of the individuals concerned, and not the act of the borough. If other facts in connection with the failure of the borough meeting to act might produce such a result, they are not alleged. It is not alleged that any borough money was expended in grading the street, or that any liability for which the borough shall be responsible was incurred. Section 23 requires the annual meeting to lay a tax to raise a sum sufficient to meet the estimated expenses; it is not alleged that such tax was not laid, and the presumption is that it was laid, and if laid, it must have been laid to meet the estimated expenses submitted to the meeting. So far as appears in this defense the warden and burgesses may have been acting, in establishing and working the grade, within the scope of the duties imposed upon them by law; and the borough is by law responsible for damage done to the plaintiff's property while they were so acting.

Is such damage an "expenditure" or a legal "liability incurred by contract or otherwise, for which said borough shall be responsible," within the meaning and effect of section 23? We think not. Suppose that a specific estimate of $500 had been submitted to and approved by the annual meet-

ing; that such estimate was based on the actual cost of grad-
ing, and on the belief that the grading would cause no damage
to any adjoining landowner; that the grading was completed
and the plaintiff in fact damaged. Can the borough escape
payment on the ground that such damage is a liability in-
curred in excess of the estimate? Is the mistake of the
warden and burgesses or of the borough meeting, as to the
injury their acts may inflict on the person or property of
others, a defense against an action for injuries actually inflict-
ed? Clearly this is not true; the language of the charter
does not authorize the borough to defeat all liability for its
torts by neglecting to provide for their payment. Section
23 should receive a reasonable construction for effectually
carrying out its evident purpose of protecting taxpayers of
the borough from lavish expenditures; but a construction
which exempts the borough from all liability for its torts
that are not foreseen and included in an estimate for annual
expenses, is not reasonable. *Bloomington* v. *Perdue*, 99 Ill.,
329; *Rice* v. *Des Moines*, 40 Iowa, 638; *McCracken* v. *San
Francisco*, 16 Cal., 591.

The second defense is insufficient, because its allegations
are not necessarily inconsistent with the allegations of the
complaint that the borough, acting through its warden and
burgesses, changed the grade of Tremont street, and by rea-
son of that change damaged the property of the plaintiff;
and that being so, the infliction of such damage in connection
with the refusal of the borough to make compensation, is a
tort for which the borough is liable (*Weed* v. *Greenwich*, 45
Conn., 170), notwithstanding its failure to include in its
annual estimates the expenditure which the commission of
such tort might involve.

*Third.* In support of his allegation that the change in
grade in front of his land was made by the defendant, the
plaintiff produced the borough records showing: 1, the ap-
pointment on December 22d, 1891, of Reuben H. Tucker as
warden, and of eight burgesses for the year ensuing; 2, the
appointment by the warden, at a meeting of the warden and
burgesses, of Reuben H. Tucker and three burgesses as com-

mittee on streets; (The charter provides that: "The warden and burgesses shall have power to appoint from their own number, or from the freemen of said borough residing therein, permanent boards or committees to assist them in the performance of their executive duties.") 3, a vote of the warden and burgesses instructing the street committee to report a grade on Tremont street; 4, the report of the street committee recommending and describing in detail a grade for Tremont street (including that portion of the street in front of the plaintiff's land), accompanied by a profile made by William G. Smith, C. E.; 5, a vote accepting the report and adopting the recommendations; 6, a meeting of persons representing the property holders of Tremont street, in pursuance of the provision of the charter that before laying out any alteration of a street or highway, the warden and burgesses shall cause reasonable notice to be given to all owners of land who may be injured thereby, to appear and show cause if any they have why the same should not be laid out; 7, a vote that the grade as recommended by the street committee be established; 8, a report of the warden and burgesses to the annual borough meeting, signed by the warden and seven burgesses (including the four members of the street committee) and by the borough clerk, dated November 30th, 1892, which report contained the statements and estimates required by the charter to be so made to the annual meeting, including under the head of highways the following statement: "The residents on that portion of Tremont street between South Cliff and Mott streets (including the plaintiff's land) having asked to have a grade established, your board complied with their request; and almost immediately after the grade was established they joined in asking for the grade and curb lines, that they might set the curbs and gutters; in giving it to them we found ourselves obliged to grade the street, which has been done, necessitating a cut on the top of the hill (by the plaintiff's land) of about four feet;" the report also contained a statement of the names of all laborers employed by the borough in work on highways, including the change of grade, and of the amount paid to each; 9, a vote

of the annual meeting, December 20th, 1892, accepting this report of the warden and burgesses.

The charter provides that at least five days prior to each annual meeting, the warden and burgesses shall cause to be prepared, printed, and distributed, a clear and detailed statement of all the expenditures of the borough for the preceding year, classifying the same under separate and suitable departments; of the amount received by the borough from each source of income, and the borough indebtedness; estimates of the expenditures for the ensuing year, and of the rate of taxation required to meet them; together with such explanations and suggestions as they shall deem proper; and that such estimates shall be submitted to the next annual meeting and be acted on by said meeting. In connection with this record evidence, the plaintiff produced as witnesses Ferris A. Castle, who testified that he was foreman of the workmen who cut down the grade in front of the plaintiff's land; that he was employed by warden Tucker, and did the work in accordance with his instructions; that Tucker and two other members of the street committee, and other burgesses, were present from time to time while he was doing the work; that the job was commenced in September, 1892, and lasted about three weeks; that some fifteen laborers were employed on the job, who were all in the general employ of the borough for work on the highways during that season, and were paid by the borough (the names of the workmen and of the amount paid to each appeared in the annual report of the warden and burgesses); Reuben H. Tucker, who testified that he instructed Castle to superintend the change of grade; that Castle took his instructions about the work from him, that Castle and the workmen under him were paid by the borough under his directions; that accounts of these payments and vouchers were submitted to the borough auditors and approved by them; that the work was done under the direction of the warden and burgesses; that William G. Smith was the borough engineer and gave the grade that Mr. Castle worked by; (the charter provides that the warden and burgesses may from time to time appoint

a borough engineer whose term of service shall be at their pleasure and whose compensation shall be determined by them; that the borough engineer shall make maps and surveys required by them; establish under their direction the lines and grades of streets and highways, and superintend the construction of such improvements, and that the maps and surveys of such engineer shall be kept with and be a part of the records of said borough); that the report of the warden and burgesses to the annual meeting of 1892 was prepared by him, was submitted to a meeting of the warden and burgesses, was read to them, approved by them, and signed by them individually; but the fact of the reading and approval of the report is not recorded in the minutes of the meeting; that the call for the annual meeting of 1892, as appears by the record produced, included among the purposes stated, " to vote on the acceptance of the report of the warden and burgesses."

The defendant objected to the introduction of the annual report, because it did not appear that a vote adopting the report had been passed at a meeting of the warden and burgesses and entered on the minutes; and also objected to the report and the vote of the annual meeting as immaterial.

The report was properly admitted. It was officially signed by the warden and seven of the eight burgesses and attested by the borough clerk, was presented to and accepted by the borough meeting, and under the circumstances of this case was competent evidence of any fact that may be proved by such proceeding.

The report was material; it is evidence of the very fact in issue, *i. e.*, the actual grading of the street by the warden and burgesses. The general rule that such a board acts by vote, and that its votes must be proved by the minutes of its meetings, is well established. There is no need in this case to discuss the modifications of the general rule. The rule is based on practical necessity and public policy, but it does not exempt such board and the corporation it represents, from the operation of the laws of evidence relating to equitable estoppel, admission and ratification.

Whether or not, under the peculiar provisions of this charter, a special vote of the warden and burgesses, in addition to the other votes and proceedings in evidence, was necessary to show authority for the actual digging of the street by the workmen employed, the statement in this report of their official acts, that the board of warden and burgesses had cut down the street in front of the plaintiff's land as alleged in the complaint, is evidence of that fact. If the persons employed acted without formal authority, this official adoption by the board is in law a ratification, made with full knowledge of all the material circumstances and with the intention of adopting the acts done as the acts of the board ; and such ratification is, for the purposes of this case, equivalent to proof of prior authority. *Norwalk Gas Light Co.* v. *Norwalk*, 63 Conn., 521 ; *Ansonia* v. *Cooper*, 64 id., 544 ; *Burlington* v. *N. H. & N. Co.*, 26 id., 56 ; *Johnson* v. *Smith*, 21 id., 635. The ratification by the warden and burgesses may have been sufficient without the action of the borough meeting ; but however that may be, evidence of such action was proper in proving the official character of the report, and could not have injured the defendant. The knowledge, either by the warden and burgesses or by the defendant, that the change in grade was a damage rather than a benefit to the plaintiff, was not a circumstance material to the ratification ; the material circumstance was the cutting down in front of the plaintiff's land ; and full knowledge of this is shown by the report itself.

It may be that the votes of the warden and burgesses in evidence, in view of the special provisions of this charter, are sufficient, in such an action as this, to show authority in the street committee of which the warden was chairman to work Tremont street to the established grade, and for that purpose to direct laborers in the employ of the borough to do the work in accordance with the survey made by the borough engineer and adopted by the warden and burgesses; but it is unnecessary to discuss that question ; it is enough that these votes, in connection with the record evidence furnished by the annual report, are plainly sufficient to legally establish such authority.

The defendant objected to the evidence of Castle and Tucker, because their authority to act for the borough was not properly proved. As it was fully proved that the grading was in fact done by authority of the borough, the evidence was properly admitted; and under the circumstances of this case it is not ground for a new trial that some of this evidence was admitted, before all the record evidence showing authority had been laid in. The testimony that some of the burgesses were present while the work was going on, was immaterial, and could not have harmed the defendant.

The defendant made eighteen written requests to the court to charge: in relation to the necessity of the warden and burgesses acting at regular meetings by votes duly passed and recorded; the want of any legal power in the warden to change the grade without authority from the board; the exemption of the borough from liability for unauthorized acts of the warden; and as to the law of ratification. Most of these requests, including all that the court was bound to comply with, were incorporated in the charge. It is unnecessary to consider in detail the requests that were refused; they were all dependent on the claim that the records in evidence could not legally establish the fact that the grading was done by authority of the warden and burgesses. This claim was unfounded.

The defendant's exceptions to the charge are also unfounded. The court correctly submitted to the jury the question " whether the borough of Ansonia by its proper officers duly authorized changed this grade, or whether certain individuals who happened to be borough officers went about it of their own accord, without being justified, and thereby became trespassers." *Thayer* v. *Boston*, 19 Pick., 516. And after referring to the votes of the borough meetings, and those of the warden and burgesses laid in evidence, to the uncontradicted testimony that Tucker, the warden and chairman of the street committee, with a force of men changed the grade, and that the bills for this work were paid by the borough, and to the annual report of the warden and burgesses, the court says: " And I charge you as a matter of

law that if that report was presented at a meeting of the warden and burgesses, and they had notice of it and its contents, and they individually signed it, it would have the same effect as though they had formally voted to adopt it; * * * that this report contained a statement of the fact that they had done this work, the grading of this street, and that certain items of expense which were included in their account covered the work upon this change of grade, and that it appears from page 139 of the record, that this report being presented to that meeting was accepted; and the question now is whether, as I said before, this change of grade was made by the borough of Ansonia, or whether it was made by voluntary individuals without any authority. And upon that question I am frank to say to the jury I don't anticipate they will have any trouble in coming to a conclusion to which they ought to come."

We find nothing in the statements or omissions of the charge to call for a new trial; nor in the exceptions of the defendant to justify further comment.

*Fourth.* In cutting down the street in front of the plaintiff's land, a sidewalk laid by the plaintiff was destroyed, a shade tree growing near the sidewalk was cut down, and the plaintiff was obliged to regrade his lot. The plaintiff produced evidence to prove the value of the tree and sidewalk, and the cost of regrading. The defendant objected to this evidence, and to the admission of " an opinion of the total damage to the property by reason of the change in the grade, taking into consideration all the circumstances, the cutting of the trees, the lowering of the grade and the destruction of the sidewalk." The same question is raised by exceptions to the charge. The court below held that the damage to the plaintiff could be shown by proving the difference between the market value of the property before the acts of the defendant, and such value after the acts were completed ; and that in determining that question the value of the trees and sidewalk and the cost of regrading might be taken into consideration ; and for such purpose admitted the evidence. This ruling is plainly justified by the recent decision in *Platt* v. *Milford*, 66 Conn., 320.

Tremont street was worked to the changed grade in September, 1892. Immediately afterwards, the owners of adjoining land on the north side of the street, set curb stones and relaid their sidewalks, and these improvements had existed some year and a half or two years when the case was tried in January, 1895. Upon the trial the plaintiff endeavored to restrict any evidence of special benefit to his property by the change in grade, to the benefit resulting from the improvements he was compelled to make in order to adapt his lot to the new grade, i. e., relaying the sidewalk and regrading his lot; and the defendant endeavored to extend the evidence of such special benefit so as to include any increase in value of the plaintiff's lot, enjoyed in common with all property on the street caused by improvements, not made by the defendant, nor compelled by the change in grade, but voluntarily made by the adjoining proprietors since the change. The court below held that the defendant might prove any special benefit to the plaintiff's property by reason of the change in grade, and for that purpose might show the condition of the street before and after the change in grade, the benefit involved in the establishment of a grade likely to be permanent, and to give the opportunity for, and make probable, beneficial improvements; but excluded evidence offered for the purpose of basing the estimate of special benefit to the plaintiff, not on the natural effect on his property of the grade at the time it was made, but upon the effect on the value of his property of private improvements actually made subsequent to the establishment of the grade. Such ruling was correct.

This action is brought in pursuance of § 2703 of the General Statutes. In *Platt* v. *Milford, supra*, we held that the words "special damage" and "special benefit" are not used in that section with any technical meaning; but are used to express damage and benefit similar to that damage and benefit which may lawfully be appraised and assessed to the owners of adjoining land claiming damage for the layout of a highway. It follows that the only damage which the plaintiff can recover in this action, is the damage sustained by

reason of the change in grade, in excess of the special benefits received. The general principle for ascertaining such special benefit is well established (*Trinity College* v. *Hartford*, 32 Conn., 478; *Nichols* v. *Bridgeport*, 23 id., 189; *Nicholson* v. *N. Y. & N. H. R. R. Co.*, 22 id., 74), and supports the ruling of the trial judge.

The difference between the value of the land just before the change in grade, and its value just after the change was made, caused by that change, was the fact in issue. Had the defendant appraised the damages and assessed the betterments at the time this improvement was ordered, it could not be claimed in such case that the special benefit to be proved would include the increased value of the plaintiff's land two years after certain private improvements might be made, and due to such improvements. By neglecting to appraise the damages at the time, and refusing to make compensation, the defendant has compelled the plaintiff to bring this action, and so the hearing has been delayed for two years. In the meantime the plaintiff's neighbors have made improvements which may add to the value of his land. It is this benefit from the acts of his neighbors received by the plaintiff subsequent to the accruing of his right of action, that the defendant seeks to appropriate and charge against the damage it has inflicted. It is the evidence of such benefit that the court below properly excluded.

Comment on each of the very many objections taken, would involve a recital of most of the testimony incorporated in the finding, and useless discussion. We have examined the record in reference to each objection, and are satisfied that no one of the court's rulings would justify a new trial; a careful analysis shows that every question, which taken by itself might seem admissible or harmless, was in fact pressed for the only purpose of getting in evidence which had been rightly excluded by the court, of the benefit supposed to have been received from the improvements made subsequent to the change in grade; and was rejected only on that ground. In the efforts of the parties on the one hand to too closely restrict, and on the other to too widely extend, the range of

evidence, of a character so uncertain as opinions on the value of land, the task of the court in testing each question by the correct rule it had laid down was one of some difficulty. We think the rule was applied fairly, and on the whole with just discrimination, and that the defendant has no ground of complaint; for it was in fact permitted to prove every element of special benefit properly claimed by it.

The errors assigned in the appeal not disposed of by the conclusions above stated, do not relate to the main controversy, and are too plainly insufficient to require special mention.

In addition to the appeal the defendant filed a motion for a new trial for verdict against evidence. There is nothing in the testimony reported to justify such motion.

There is no error in the judgment complained of, and the motion for a new trial is denied.

In this opinion the other judges concurred.