ELIZA A. RICHARDSON, Appellee, v. CITY OF SIOUX CITY,
Appellant.

**Municipal corporations:** CHANGE OF STREET GRADE: MEASURE OF DAM-
AGES. The measure of damages in case of a change of street
grade is the difference in value of the property just before and
just after the change, in so far as such difference is due to the
change.

**Same.** Damages for change of street grade are only allowed where
improvements have been made; and property is improved within
the meaning of the statute where it has been put in comfortable
and convenient use for the purpose for which intended.

**Same:** EVIDENCE. Opinion evidence as to the value of adjacent
property just before and just after a change in the street
grade, and the cost of putting the property in the same rela-
tive condition with respect to the new grade, is competent on
the question of damages for the change.

**Same.** Evidence as to how the original street grade in question
compared with that of the other streets is immaterial in the
question of·damages for a change in grade.

**Same.** Where trees were planted and growing in the parking in
conformity with the original street grade such fact is competent
evidence to show improvements in conformity with the grade
established, and also as bearing on the condition and value of
abutting property just before and just after a change in the
street to conform to a subsequent grade; but if not planted in
conformity with the original street grade such fact is imma-
terial on the question of damage for change in grade.

**Same:** NATURE OF LIABILITY. The liability of a city to an abutting
owner for injuriously changing the street grade is the same
in extent and character as for injuriously grading without
authority.

**Same:** EVIDENCE. Evidence as to the cost of a retaining wall upon
a change in the street grade is inadmissible on the question
of damage for the change, in the absence of proper proof of
the character and extent of the wall made necessary by the
change.

**Same.** The fact that abutting property under the original grade
was walled only in part does not preclude a finding that be-

cause of lowering the grade a wall co-extensive with the property is required.

**Same.** Evidence of the cost of shifting the location of buildings while lowering them to conform to a new street grade is inadmissible on the question of damage for the change in grade.

**Same.** Where it appears that a building was constructed prior to the establishment of any grade and that thereafter an addition thereto was built, evidence of the value of the property in its entirety just before and just after the change in the grade is inadmissible on the question of damage; since the city is only liable for injury to such improvement as was made with respect to the grade as first established.

**Same:** RECOVERY OF DAMAGES. The fact that buildings constructed after the establishment of the street grade were built on the natural surface of the ground higher than the grade, and the ground had not been terraced to the street grade, will not 'of itself preclude recovery of damages for a change in the grade.

**Same:** INSTRUCTIONS. Where part of the buildings were constructed prior to the establishment of the original street grade an instruction permitting recovery of damages for the entire cost of lowering all buildings to conform to a new grade is erroneous.

*Appeal from Woodbury District Court.*— HON. J. L. KENNEDY, Judge.

WEDNESDAY, NOVEMBER 20, 1907.

ACTION at law to recover damages growing out of a change in street grade. From a verdict and judgment in favor of plaintiff defendant appeals.— *Reversed* and *remanded* for new trial.

*J. N. Weaver* and *Fred W. Sargent,* for appellant.

*Marks & Marks,* for appellee.

BISHOP, J.— Plaintiff is the owner of real property in Sioux City described as lots 4, 5, and 6, block 52, Sioux City East addition. In dimension the lots are each fifty by one hundred and fifty feet, extending east and west.

They are bounded on the west by Nebraska street, and on the south by Ninth street. They number from north to south. Prior to the year 1871 a large house of ten rooms had been built on the property, and this was located near the southwest corner, facing Ninth street. As constructed, it covered parts of lots 5 and 6. During the year mentioned, a grade for Nebraska and Ninth streets was established by ordinance; the level thereof being below the natural surface of the lots, varying approximately from two to six feet. It does not appear that the city council ever took official action to bring the streets to the grade thus established, but it would seem that some excavating work was done on both streets. Following the establishment of the grade, plaintiff's grantor built a double house on the easterly portion of lots 5 and 6, facing Ninth street. Still later he built a single house on the westerly end of lot 4, facing Nebraska street. In addition to these, a barn was built on the easterly end of lot 4, and some coal sheds and other outhouses on lots 5 and 6. All the buildings mentioned were constructed in conformity with the natural surface of the lots. So, also, shade trees were planted on the lots and along the Ninth street parking, and a brick retaining wall was built along Ninth street and for a part of the distance on Nebraska street. In the year 1905 the city by ordinance changed the grade of the streets in question by lowering the same — varying from three and sixty-five one hundredths to eleven and fifty-five one hundredths feet — and the work of making the physical change was at once entered upon and accomplished. This action to recover damages followed.

The defendant city does not question on this appeal its liability for the legal damage actually sustained by plaintiff growing out of such change in grade, if any there was. The contentions for error are based wholly on rulings on evidence offered in proof of damage, and on the instruction given the jury by the court on the subject of the measure of damage. There is a further contention that the verdict returned, and

on which the judgment is based, was excessive.   The right to recover damages in such cases is purely statutory.   And it is the statute (Code, section 785) that " when any city or town shall have established the grade of any street or alley, and any person shall have made improvements on the same, or lots abutting thereon, according to the established grade thereof, and such grade shall thereafter be altered in such a manner as to damage, injure or diminish the value of such property so improved, said city or town shall pay to the owner of such property the amount of such damage or injury."

On the question of the measure of damage to be applied in such cases, we have repeatedly said that it is the difference

1. Municipal corporations: change of street grade: measure of damages.

in the value of the property as it was just before the change and as it was just after, so far as such difference is due to the change. *Stewart v. Council Bluffs,* 84 Iowa, 61.

It will be observed that the statute is that damages are recoverable only where improvements have been made according to the initial grade established for the street; and it

2. Same.

has been held that property is so improved within the meaning of the statute " whenever it is so improved that it can be comfortably and conveniently used for the purpose to which it is devoted, while a street upon which it abuts is maintained at that grade." *Conklin v. Keokuk,* 73 Iowa, 343.

In getting at the matter of damage, it is proper of course, to take the opinions of witnesses as to the value of the property in question before and after the change of

3. Same: evidence.

grade is effected. *Dalzell v. Davenport,* 12 Iowa, 437.   So, also, the cost of putting the property in the same relative condition with respect to the new grade is admissible as bearing on the difference in value brought about by the charge. *Stewart v. Council Bluffs, supra; Richardson v. Webster City,* 111 Iowa, 427.

With these rules in mind, we may now go to the specific

matters of error urged upon our attention. The city engineer, a witness for plaintiff, was asked on direct examination how the grade on Ninth street and Nebraska street named under the grade of 1871 compared with the grade on other streets in question. The materiality of this evidence is not apparent, and the objection thereto should have been sustained.

**4. SAME.**

Another witness for plaintiff was allowed to testify to the fact that, following the grade of 1871, a row of maple trees was set out in the parking along Ninth street, and as to the condition of such trees at the time they were removed in the work of effecting the physical change in the street to conform to the 1905 grade. This is complained of as error. In view of the state of the record as we have it before us, we think the complaint warranted. There is no evidence showing that the trees were set out in conformity with the grade of 1871; and it cannot be presumed that they were in the face of the fact — seemingly acquiesced in — that the physical surface of the street was never reduced to conform with the level of that grade. For all that appears, therefore, a removal of the trees might have been necessary to a reduction of the street surface to the level of the initial grade. And, accepting such as the case, it is well settled that there could be no recoverable damage. *Farmer v. Cedar Rapids,* 116 Iowa, 322. In saying this, however, we are not to be understood as holding that in a proper case evidence may not be introduced showing that trees planted and growing in a grade parking have been destroyed in the course of making the physical change incident to the establishment of a new grade for a street. Such evidence may be competent as tending to show that improvements had been made in view of and conforming to the initial grade.

**5. SAME.**

So, also, as we think, it may be introduced as bearing on the condition and value of the abutting property just before and just after the making of the change in the street to cor-

respond with the subsequent grade.   Such is undoubtedly the rule where, as in some of the States, municipalities do not take title in fee to the land dedicated or acquired for street purposes.   27 Am. & Eng. Ency. 144, citing *Holley v. Torrington,* 63 Conn. 426 (28 Atl. 613); *Cook v. Ansonia,* 66 Conn. 413 (34 Atl. 183); *Walker v. Sedalia,* 74 Mo. App. 70; *Seaman v. Washington,* 172 Pa. 467 (33 Atl. 756). And we perceive no good reason for a different holding where, as in this State, it is a rule of the statute that on dedication title passes to the municipality in fee.   As was said in *Barney v. Keokuk,* 94 U. S. 324 (24 L. Ed. 224): " On the general question as to the rights of the public in a city street, we cannot see any material difference in principle with regard to the extent of those rights, whether the fee is in the public, or in the adjacent landowner, or in some third person."   And certainly there can be nothing in the genius of the rule of the statute indicating an intention to relieve the city from a liability which but for the rule the law would force upon it.   And, in line with this reasoning, we think is our holding in *Richardson v. Webster City, supra.*   That was a case, it is true, where the defendant city had proceeded to cut down the physical surface of the street without having first adopted a grade ordinance, and we held that the destruction of trees growing in the street, but not obstructing travel, was an element in the damages sustained by the abutting owner.

The situation comes down to this:   The city is liable in damages if it shall injuriously grade in the absence of an ordinance, and it is liable in damages if it shall injuriously make a change in grades.   And the damage to the abutting owner cannot be any different in extent or character in the one case from what it is in the other.   Hence the rule applicable in the one case should be held to apply in the other.   Indeed, there is greater reason for holding the city to liability in cases of grade changes.   It is within common knowledge that street

6. SAME:
nature of
liability.

parkings — that is, a space left between the curb line and walk, and quite universal in residence districts — are intended by the city, and in a sense dedicated, for the purposes of street and property adornment. Following the establishment of a grade, every abutting owner is invited, impliedly, at least, to improve such parking by sodding the space in front of his property, and by planting trees, etc., thereon. And, in doing this, he not only improves the street, but in a substantial sense his own property. It is not unreasonable, in our view, to say that such was in the mind of the Legislature when providing that damages should be recoverable when the abutting owner " shall have made improvements on the same [i. e., the street], or lots abutting thereon."

One Weibel, a stone mason, called as a witness by plaintiff, was asked to state the cost per foot of building a retaining wall on the respective street sides of plaintiff's property, such

7. SAME: evidence.

wall to be seven feet in height, and to hold a terrace or bank of ground above, eight feet in height. Objection to this by defendant was overruled. The witness answered that " it depends on what kind of a wall it wants." Thereupon by counsel: " Well, it wants a good, strong wall." Objection being overruled, the witness answered fixing the cost at sixty cents per square foot, with cost of coping added — thirty-five cents per running foot if cement, and one dollar per foot if stone. The contention for error here is that the evidence was without proper foundation; also, that it was called out on the assumption that plaintiff was entitled to have considered as damages the cost of a stone wall extending the entire distance of the respective street facings. Counsel for plaintiff concede the absence of proper foundation for this evidence, but they contend that the witness was called out of turn to permit of his discharge from attendance upon court, and that the foundation evidence was subsequently supplied. We do not find any such evidence in the record. At best, nothing more appears than that, if the natural surface of the lots shall be permitted to

remain, there will be need for a terrace supported by a wall at the lot line.   Now, it was not for counsel to determine the character or extent of the wall required.   That was to be determined from evidence coming from competent sources, and addressed to the necessities of the situation as in fact in law the same existed.   For such reason, an answer to the question should not have been permitted.

Looking for a moment at the other ground of objection, it is not altogether fair to say that the question assumed that plaintiff was entitled to a wall co-extensive with her boundary lines.   Of course, as far as such question was in the case, it could only be answered out of the evidence by the jury.   And we may add, in view of a possible retrial of the case, that an affirmative finding was not precluded, as counsel seem to think, by the fact that, as existing under the original grade, the property was, in fact, walled only in part.   It is the new condition that is to be dealt with.   And the liability of the city cannot be made to depend wholly upon the fact that previously a wall for the entire distance was not necessary, or, if necessary, that it had not yet been built.

8. SAME.

A house mover was called as a witness for plaintiff, and, after testifying on the subject of the probable cost of lowering the buildings, etc., to conform to the new grade, he was asked respecting the increase of cost over that of lowering the buildings incident to shifting the location thereof from one side of the property to the other; and, over objection, an answer was permitted. This was error.   It is the cost of bringing the property into conformity with the new grade that is alone material.   The property owner may not effect a relocation of his buildings at the expense of the city.

9. SAME.

Several witnesses for plaintiff were permitted to testify, over objection, to the value of the property in its entirety as existing just before and just after the change in the street surface to conform to the 1905 grade.   This was error.   The

corner house, as we have seen, was built prior to the establish-
10. SAME.    ment of any grade for the streets. As far
as appears, no change has ever been made
therein, except to add on a couple of rooms. Now, mani-
festly the entire difference in value of the property as af-
fected by the increased elevation of such house above the
level of the street as subsequently graded could not be
chargeable against the city. There could be no warrant for
going farther than to make an allowance on account of the
rooms added, and for whatever was done as shown in the
way of improving the surrounding grounds to adapt the use
of the building to the street conforming to the initial grade
established.

Counsel also insist that here was error because it had
not been shown that the single house facing Nebraska street
had been built, or the grounds improved, in reliance on the
11. SAME:    initial grade. We are not disposed to think
recovery of    this contention well founded. The house was
damages.    constructed after the establishment of the
grade. It is true that it was built on the natural surface,
which was a few feet higher than the level of the grade, and
that the grounds in front had not been rounded or terraced
down to the street level. But it was not out of reason to
conclude that the owner preferred the elevated site and
improved accordingly; also that he had elected to await the
excavation of the street to conform to the grade established
before proceeding to terrace or wall these grounds, and if
so, this could not, standing alone, be construed as sufficient
to avoid a liability on the part of the city for the change in
grade subsequently entered upon.

The twelfth instruction given to the jury, which has to
do with the subject of the measure of damages, is criticised
12. SAME:    for that a recovery is thereby permitted for
instruction.    the entire cost of the lowering of all the build-
ings, etc., to conform to the new grade. For reasons made

clear in the last above paragraph of this opinion, the instruction involved error.

As the case must go back for a new trial, we need not consider the further question made on this appeal respecting the amount of damages returned by the jury. For the reason pointed out in this opinion, the judgment is reversed, and the case remanded for a new trial.— *Reversed.*