JOHN SHANNAHAN *vs.* THE CITY OF WATERBURY.

New Haven & Fairfield Cos., Oct. T., 1893.  ANDREWS, C. J., CARPENTER, TORRANCE, FENN and BALDWIN, Js.

Damages for land taken for a public improvement should be assessed as of the time the land is taken; and that time, in contemplation of law, is the time the improvement is finally adopted, which may or may not coincide with the time actual possession is taken.

The plaintiff, whose land had been appropriated by the city of Waterbury for the alteration and widening one of its public streets, appealed from the assessment of damages; while his appeal was pending the land so taken appreciated in value and the plaintiff upon trial in the Superior Court claimed the right to recover damages for the land at its enhanced value. Held:—

1. That under the terms of the defendant's charter the land must be regarded as having been "taken" when the report of the road commissioners was accepted by the court of common council and recorded, and compensation had been made or secured to the land owners.

2. That the plaintiff's appeal from the assessment of damages simply postponed the payment of such damages until the final determination of his appeal, but did not postpone the time the improvement was deemed to have been made, nor suspend the right of the city to proceed with the work.

3. That the plaintiff therefore, was only entitled to recover damages as of the date of the original assessment.

When a public improvement authorized by a city charter is duly carried out by the city, to the extent of taking the required land, paying damages and collecting benefits therefor, and working the improvement wholly or in part, it is then too late for the city to abandon the improvement to the detriment of one claiming to be aggrieved by the assessment of damages.

[Submitted on briefs, October 24th—decided December 13th, 1893.]

APPEAL by the plaintiff from an assessment of damages for the taking of his land by the defendant for an alteration and widening of one of its public streets; brought to the Superior Court in New Haven County; facts found by a committee and judgment rendered (*R. Wheeler, J.*) for the plaintiff, and appeal by the defendant.

The case is sufficiently stated in the opinion.

*Lucien F. Burpee,* for the appellant (defendant).

*Webster & O'Neill,* for the appellee (plaintiff).

CARPENTER, J. In 1889 the city of Waterbury accepted the lay-out of an alteration and widening of one of its public streets known as South Riverside street. The improvement took the whole of a small wedge-shaped piece of land containing about twelve hundred square feet, with a building thereon standing. The damages assessed for such taking were $2,275. From that assessment an appeal was taken to the Superior Court. The case was referred to a committee. On the trial a question arose whether the damages should be assessed as of the time when the assessment was made by the common council, or as of the time of hearing before the committee. Damages were assessed in the alternative—$3,000 if the earlier day was adopted, and $3,500 if the later. The Superior Court accepted the report and rendered judgment for the higher sum. The defendant appealed to this court.

There is in effect but one error assigned, and that is the first. " The court erred in not assessing the damages of the plaintiff according to the value of his land at the time when such land was taken for the public use." The other two assignments are but a repetition of the first in another form. Another statement of the question before us is, when was the land taken for the public use?

The city insists that it was taken when the assessments made by the common council became due, September 7th, 1889. The plaintiff insists that it was taken when the judg-

ment was rendered on the appeal by the Superior Court, May 31st, 1893. The Superior Court sustained the plaintiff's claim. In this we think the court erred.

The provisions of the charter bearing on this question are as follows:—Section 27 makes the city a highway district, and vests in it exclusive authority over the streets and highways therein, "and exclusive power to lay out, make, or order new highways and streets within the limits of said city, and to alter, repair and discontinue all highways," etc.

The court of common council is authorized to appoint a board of road commissioners, with power "to lay out, construct or alter public squares, parks, highways, bridges or walks in said city, whenever ordered to do so by said court of common council." Before proceeding to lay out or alter any street, etc., the 36th section requires said board to cause reasonable notice to be given to the owners of the land to appear before the board and show cause why the lay-out, etc., should not be made. Sec. 37 is as follows:—"Whenever said board shall have decided to lay out any such square, park, street, highway, bridge or walk, or alteration thereof, they shall make a report in writing of their doings to said court of common council, which report shall embody a survey containing a particular description of such square, park, street, highway, walk, or alteration thereof; and whenever said report shall have been accepted by said court of common council, and recorded in the records of said city, and just compensation shall have been made to the persons whose property is to be taken for such public improvements, or shall have been deposited in the treasury of said city, to be paid to them when they shall apply for the same, in the manner hereinafter prescribed, then such square, park, street, highway, bridge or walk, or alteration thereof, and the land embraced thereby, shall be and remain taken and devoted to the public use for which it shall have been so laid out." Sec. 38 provides for the assessment of damages and benefits to be made by the court of common council, or by a board of compensation by it appointed. It is then provided as follows:—"Upon the completion of all their assessments (either for damages, or

damages and benefits, as the case may be), for any such square, park, street, or other public improvements, by said board of compensation, said board shall make a report of all their doings to said court of common council, and when such report shall have been accepted and recorded in the records of the proceedings of said court of common council, each and all of said assessments shall be legally deemed to have been made and done, and not before. Upon the completion by said court of common council of all their assessments for benefits in reference to any such square, park, street, or other public improvements, the doings of said court of common council shall be recorded ; and when so recorded, each and all of said assessments by said court of common council shall be legally deemed to have been made and done, and not before."

Thus it appears (when no appeal is taken) that the charter, in the 37th section, expressly provides that the time when the property condemned for public use shall be deemed to be taken is when the proceedings are duly recorded, and compensation is made or secured to the owners, which in the present case was September 7th, 1889, assuming that the payments had then been made or secured ; that is, had not this appeal been taken the time of taking the land for public use would clearly have been on the day last named. That seems to be clear from an inspection of the charter, and requires no further argument.

The question now arises, how does the appeal affect this question ? The charter answers the question. Section 41 provides that two classes of persons may appeal : First, any one aggrieved by any act of the city " in reference to the laying out, constructing, altering or improving any square," etc. ; second, any one aggrieved by any act " in making any of the assessments of damages and benefits authorized in this act." There is a provision however that the appeal shall be taken within sixty days after the doing of the act of which he complains. The section concludes as follows :—" No public square, park, street, highway, bridge or walk, or alteration thereof, laid out under the provisions of this act, shall

be opened or occupied by said city until the expiration of the time limited for the giving of notice to said city of such an application for relief; nor until all applications duly made as aforesaid for relief against acts done in reference to the laying out of such public improvements, shall be finally disposed of by said Superior Court." Prohibiting the opening and occupying the improvement during the pendency of an appeal of one class implies a permission to open and occupy if the appeal is from the other class only. But the implication is unnecessary. For in an amendment to the charter, passed in 1878, sec. 1, it is expressly provided " that in case of any appeal being made from the doings of the board of compensation * * * in making any assessment of damages or benefits * * * and no appeal is taken from the lay-out, nothing in said charter shall be construed to prevent said city from opening, occupying and working the same during the pendency of the appeal from the doings of said board."

The question is not as to the taking of the plaintiff's land alone, as the argument seems to assume, but is rather when was it determined to make the improvement and to take all the land necessary for that purpose? The plaintiff's case cannot be separated from others whose lands were taken, but must be considered in connection with the others as one transaction; so that the question is, when was the improvement as a whole determined upon. Was it at one time as to all? Or at different times with the several land owners? The charter evidently contemplates each improvement as one transaction, and not several transactions with the several land owners. Therefore we are not to suppose that the improvement was adopted at one time as to the non-appealing proprietors, and at another as to the plaintiff who appealed. Thus, when the lay-out was completed and the assessments made, notice was given that the damages assessed were payable September 7th, 1889. On that day it seems damages assessed to others were paid, and would have been paid to the plaintiff but for his appeal. The appeal simply postponed the payment of his damages until the final determination of the appeal, and does not postpone the time when the

improvement shall be deemed to have been made. When the improvement was made, then, in contemplation of law, the land was taken, and the damages should be assessed as of that time, and not as of the time when the city took actual possession, or as of the time when the plaintiff's damages were determined on the appeal. It follows that the city had no option to abandon the improvement after the assessment of damages on the appeal. Perhaps there would have been if the course indicated by the 9th section of the city ordinances had been taken and the payment of the damages and the collection of the benefits had been suspended until all appeals had been determined, and the city had also refrained from working the improvement. But after paying damages, collecting benefits, and working the improvement wholly or in part, it was too late to abandon the improvement.

The charter clearly gives the right to the city to proceed with the improvement notwithstanding the appeal and notwithstanding the uncertainty as to the amount of damages that may ultimately be recovered. No damage was thereby done the plaintiff. He assumed no risk. The land was being taken by a portion of the public under the right of eminent domain, and a public municipality was liable for the damages, so that the payment was reasonably secure.

The city not only proceeded with the improvement as to the land taken from others, but actually entered upon the land taken from the plaintiff and removed therefrom a building pending the appeal.

Other questions are incidentally discussed in the plaintiff's brief, but we do not regard them as having any particular bearing upon the main point, and therefore we refrain from considering them more at length. There is error, and the judgment is reversed, and the case remanded with instructions to render judgment for three thousand dollars with interest.

In this opinion the other judges concurred.