ELLA W. BOHANNAN vs. THE CITY OF STAMFORD.

Third Judicial District, New Haven, June Term, 1907.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, JS.

Condemnation proceedings cannot be rescinded or nullified to the detriment of a landowner who by virtue thereof has acquired an unconditional right to the damages awarded him.

In the present case the city of Stamford, following the provisions of its charter authorizing it to condemn land for park purposes (14 Special Laws, p. 857), took the successive steps therein prescribed, the last of which was the record and publication by the city clerk of the descriptive survey of the lands to be taken, the names of their respective owners, and the amount of damages to be paid to each. These damages, the charter provided, "shall thereupon become payable to the persons entitled thereto at the end of thirty days after" the date of such publication. Held that as soon as such record and publication were made the city became indebted to each of those whose lands were described in the survey, for the damages awarded to him, and that it could not thereafter, although before the expiration of the thirty days, rescind its action so as to impair the vested right of such landowners to recover their assessed compensation.

Among other requirements, the charter in the present case provided that the doings of the common council should be referred to the board of appropriation and apportionment for its approval, which could be given only "by a majority vote of all its members present and absent." Held that the mayor, who was ex officio a member of the board but not authorized to vote except in case of a tie, could give the casting vote if the board was equally divided.

The city was authorized to issue bonds for the purpose of paying for and improving land taken for public parks. Held that this provision was permissive but not mandatory; and that the failure to issue bonds could not affect the plaintiff's right to recover.

Argued June 4th—decided July 30th, 1907.

ACTION for damages assessed by the defendant in favor of the plaintiff for land taken for public use for park purposes; brought to the Superior Court in Fairfield County. An answer was filed containing two defenses. A demurrer to the second having been " overruled *pro forma,* with right reserved to raise all questions of law therein on appeal or by reservation " (*Reed, J.*), the plaintiff replied to both defenses, and the cause was reserved on a finding of facts (*Reed, J.*) for the advice of this court. *Judgment advised for plaintiff.*

*Michael Kenealy* and *Homer S. Cummings,* for the plaintiff.

*Stanley T. Jennings,* for the defendant.

BALDWIN, C. J. The defendant city, under its charter (14 Special Laws, p. 857), is authorized to take land for park purposes. Its common council must first " determine that public necessity and convenience require the taking," and before that body can " determine to take land for the purposes aforesaid," it must give an opportunity for a hearing before it to " all persons whose land is proposed to be taken." If it then determines that public necessity and convenience require the taking of their lands, it is to appoint a committee to " determine the damages to be paid " to each of them, and report their determination with a descriptive survey of the land " proposed to be taken." Another opportunity for a hearing before the common council is then to be given to all parties in interest, before action on this report. Should it be adopted, the council is to report its doings to the " board of appropriation and apportionment." Another opportunity for a hearing before that board is then to be given to all parties in interest. If, after such hearing, the board " by a majority vote of all its members, both present and absent," approve " the taking of said lands for the purposes aforesaid and the damages to be paid therefor," it must " report its approval to said com-

mon council, and the clerk of the city shall thereupon record the descriptive survey of the lands to be taken, with the name or names of the owner or owners of said land or lands, and the damages to be paid to each of said owners, in the records of said city, and in the town clerk's office of the town in which said land or lands are situated, and cause a notice, signed by the mayor or clerk of said city, containing the names of the persons to whom damages have been awarded, and the amount awarded to each, to be published not less than three times in a newspaper published in said city; and the damages so awarded to be paid shall thereupon become payable to the persons entitled thereto at the end of thirty days after date of publication of said notice." Landowners are given an appeal from the award of damages, but not from the determination to take their lands.

The provisions for recording " the descriptive survey of the lands to be taken " and the " damages to be paid to each of said owners " in the town clerk's office, and publishing in a newspaper a notice of the damages awarded, followed by the declaration that these damages " shall thereupon become payable to the persons entitled thereto at the end of thirty days after date of publication of said notice," sufficiently indicate the intent of the General Assembly that upon such record and advertisement the city should become immediately indebted to each of those whose lands were described in the survey, for the damages awarded to him, although the date of payment was postponed for thirty days.

These several steps were duly taken in the proceedings on which the plaintiff founds her claim. Upon the completion of the last of them, the sum awarded to her therefore became an absolute obligation of the city, *debitum in presenti, solvendum in futuro;* and her right to receive it was equally a vested one, whether her title to the land in question passed out of her at that moment, or not until the expiration of the thirty days, or remained in her until the actual payment of the compensation awarded. See *Shannahan* v. *Waterbury,* 63 Conn. 420, 425, 28 Atl. 611.

Within the thirty days the common council voted to re-scind its action, and notified all parties in interest of such rescission and that the condemnation proceedings were of no effect.

The city charter gives no express power to the common council to abandon condemnation proceedings once com-menced, and none can be implied either in favor of that body or of the board of appropriation and apportionment, or of both together, after such proceedings have been car-ried so far as to invest the owner of land condemned with an unconditional right to a certain compensation for it.

It is contended that there was a fatal flaw in the con-demnation proceedings, in that the approval of the board of appropriation and apportionment was given by the cast-ing vote of the mayor. This board is constituted by the charter (13 Special Laws, p. 1152, § 8) as " consisting of eight members, who shall be electors of said city, and who shall be appointed by the mayor, by and with the advice and consent of the common council, and in such manner that no political party having representatives in the com-mon council shall have more than one-half of said members." By the same section, " the mayor of the city shall, ex officio, be a member of said board and preside over its meetings, and when he is absent, said board shall choose, by a major-ity vote of those present and voting, a chairman to preside in his stead, but the mayor shall have no vote in any of the proceedings of said board except in case of a tie." There is nothing in the subsequent amendment of the charter in relation to parks, enacted in 1905 (14 Special Laws, p. 858, § 6), by which the approval by the board of action by the common council as to taking land for park purposes must be " by a majority vote of all its members, both present and absent," to indicate any intent to exclude the mayor's vote, should there be a tie. He is as much a member of the board as any of the others. Although only authorized to vote in order to break a tie, his vote in that case, when all are present and have voted, is sufficient to make a majority within the meaning of the charter.

The amendment of 1905 authorized the common council to issue city bonds " for the purpose of paying for and improving land taken for the purposes of a public park," and to provide for their ultimate liquidation by a sinking fund to be constituted by annual appropriations. No action has been taken by the common council toward the issue of such bonds. This is set up by the defendant as an answer to the plaintiff's claim. But it is sufficient for her to show a vested right to payment for her land. The charter does not prohibit the city from paying for lands taken for park purposes out of its general funds. See *Whitney* v. *New Haven*, 58 Conn. 450, 461, 20 Atl. 666; *Cook* v. *Ansonia*, 66 Conn. 413, 423, 34 Atl. 183. It may issue park bonds, but it is not required to do so.

Judgment is advised for the plaintiff, and costs in this court will be taxed in her favor.

In this opinion the other judges concurred.