## J. G. D. NEWTON ET ALS. APPEAL FROM BOARD OF STREET COMMISSIONERS OF THE CITY OF HARTFORD.

First Judicial District, Hartford, January Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

In construing a statute, the legislative intent rather than the letter should prevail, and, to give effect to that intent, the statute should be read in the light of its subject-matter, its object, and the remedy it provides; and a practical construction placed upon a statute which has been in existence for many years is high evidence of what the law is.

The charter of the city of Hartford (7 Special Laws, p. 527) provides that if, upon the hearing of any appeal from the appraisal of damages and assessment of benefits for the layout or construction of any public improvement, the judge or committee hearing the same shall find cause to alter the appraisal and assessment, or assessment only, he shall proceed to reapportion the whole amount of damages and benefits, or benefits only, upon such persons or lands specially benefited. It also provides that as many of the parties interested as may choose to do so may join in such an appeal. No provision is made for notice to persons affected by the appraisal or assessment other than the appellants, except that, if the judge or committee is of the opinion that persons other than those who appear upon the record are interested in the subject-matter of the appeal, notice must be given to them. Under other provisions of the charter (8 Special Laws, p. 111) the layout of such an improvement is made and land is taken therefor only upon the completion of all proceedings for the determination of the amounts of damages and benefits. Upon an appeal by three only of numerous owners of land affected by an appraisal of damages and assessment of benefits for the layout of street, building, and veranda lines, and a change of grade, it was *held:*—

1. That the committee hearing the appeal had no power to alter the amount of damages awarded to, nor of benefits assessed against, any person other than the appellants except so far as might be necessary in order to reapportion among those specially benefited the amount added to the awards to, or taken from the assessments against, the appellants.

2. That the notice provided in the charter applied only to a reapportionment of the expense among those specially benefited in case the committee should find cause to alter the amount of the awards to or assessments against the appellants; and, as there was *no*

provision for notice to other persons affected by the assessment proceedings that the amounts awarded to or assessed against them would be reviewed, the committee had no jurisdiction to make a general reassessment.

3. That the appraisal of damages and assessment of benefits must be made as of the date of the original appraisal and assessment.

The amount of damages to be awarded to and of benefits to be assessed against an owner of property affected by a public improvement are to be separately determined. The amount of special benefits, that is, benefits peculiar to an owner as distinguished from those common to the general public, is not affected by the amount of damages awarded to him; and an owner whose property is damaged is entitled to just damages irrespective of the damage done to or the benefits assessed against any other person.

That the owner of land adjacent to a new street may, in the future, be required by the municipal authorities to lay a sidewalk and curb and to pay for street sprinkling, is not an element in the damages to be awarded to him on account of the layout and construction of that street.

Argued January 4th—decided April 21st, 1911.

APPEAL from an assessment of benefits and damages arising from the establishment of street, building, and veranda lines, and the grade, of an extension of Capitol Avenue in Hartford, taken by three property owners to the *Hon. John Coats*, judge of the Court of Common Pleas in Hartford County, and reserved by him, upon the facts found by a committee and remonstrances to his report, for the consideration and advice of this court. *Judgment advised for city.*

On March 4th, 1908, the board of street commissioners of the city of Hartford duly made an appraisement of damages to over thirty different owners, and an assessment of benefits against over one hundred and twenty-five owners, caused by the layout of street and building and veranda lines, and change of grade, on Capitol Avenue Extension, between Prospect Avenue and Sisson Avenue, in said city.

The petitioners or appellants, said Newton, Deane and Janson, owners of land affected by said appraise-

ment, duly appealed to the *Hon. John Coats*, judge of the Court of Common Pleas in Hartford County, from said appraisement.

Upon motion of all the parties, said appeal was referred to William M. Maltbie, Esq., as committee to hear said appeal. Said committee fully heard the parties and found cause to alter said appraisal, and was of opinion that persons other than those who appear of record were interested in the appeal, and therefore caused the appellants to give notice to such other persons of the appeal, and that he would hear all parties in whose favor damages were appraised or against whom benefits were assessed, and all other parties in interest relative to any alterations therein.

Thereafter the committee fully heard all parties and reapportioned the benefits and damages. It changed the award of damages to the three appellants as follows:—

Newton from $1,751.53 to $2,425.00
Deane　　"　　369.00 "　　460.00
Janson no change.

It changed the assessment of benefits upon the three appellants as follows:—

Newton from $1,938.26 to $1,625.53
Deane　　"　　85.08 "　　52.72
Janson　　"　　153.21 "　　170.13

It also changed the award of damages in the case of many owners who did not appeal; these changes being increases in the damages to be paid to them. It not merely apportioned among all who did not appeal the added amount of damages and benefits found by the committee, but it treated the benefits as an independent matter, and increased some and reduced many of the assessments of those not appealing. It awarded the increased damages as of the date of the committee's report, and not as of the date of the assessment by said

board. By adopting the later date, the committee increased the damages payable to said Newton $225, and in the case of Dunn and Bannon, who did not appeal, $63.85.

Upon the trial to the committee, Mr. Billings, a witness for the said Newton, was inquired of, on direct examination, what was the cost of furnishing and setting a curb according to the rules prescribed by the city? The appellant claimed the question because "one of the elements of being put on a corner is the fact that we have got to lay a walk and curb"; and that that tends "to show an increase in the value of the owner's property, and it is one of the elements tending to show a special injury."

The appellee objected, because such evidence was irrelevant to prove any damage suffered by appellant which was properly allowable, and that any damage done him by causing him to build a sidewalk was set off by the benefit, and that the question whether any injustice was done him when such walk should be ordered would properly be raised in an appeal from the proceeding in which said order was made, and which would be entirely distinct from this proceeding. This objection the committee sustained.

Mr. Nevers, clerk of the board of street commissioners, when a witness for said Newton, was inquired of on direct examination: "Q. What is the cost, Mr. Nevers, per running foot for sprinkling for the season in the vicinity of Sisson Avenue along near the Boulevard?" The appellee objected upon substantially the grounds of the preceding objection, and the committee sustained the objection.

On the redirect examination of Mr. Kennedy, a witness for Delia P. Dunn, a property owner to whom damages were appraised and against whom benefits were assessed by reason of said layout, appeared before said

committee, and the following occurred: "Q. You said in answer to Mr. Howard that most of the streets in the city were macadamized by the city; I consider you meant at public expense? A. Yes. Q. Isn't it a fact that before the city will macadamize a street at its own expense it requires an abutting owner to put down curbs and walks? A. That is a rule. Q. How much does it cost to put down a curb? Mr. Steele: I object."

The appellant claimed that as the appellee had brought out the fact that in developing property into building lots the macadamizing the streets was usually done by the city, it was competent to prove such cost, as showing what the city required of adjoining property-owners before it would macadamize a street. The committee ruled that while it might be competent to show that the city would require an adjoining property-owner to put down a curb before macadamizing a street, the cost of a curb in this particular instance was too remote to the issue in the case, and excluded the evidence.

Said Newton remonstrated against the acceptance of the report of the committee because of the said rulings on evidence. Said city of Hartford remonstrated against the acceptance of the said report, the grounds pursued being (a) whether the committee erred in increasing the award of damages to persons who did not appeal; (b) whether in reversing the assessment of the board the date of the assessment should not have remained the same; (c) whether the benefits of those who did not appeal should be changed except to the extent necessary to care for the change of benefits and damages of those who did appeal.

The parties stipulated and requested a reservation for the advice of this court upon the questions of law: Whether the committee erred in respect to the matters stated in the said remonstrances, filed by Newton and

the city of Hartford against the acceptance of the committee's report.

*William Waldo Hyde* and *Charles Welles Gross*, for the City of Hartford and its Board of Street Commissioners.

*Joseph P. Tuttle* and *Richard J. Goodman*, for the appealing property-owners.

WHEELER, J. The board of street commissioners of Hartford awarded damages to over thirty owners, and assessed benefits against over one hundred and twenty-five owners, for the layout of Capitol Avenue extension; three of these owners appealed. The committee to whom the judge referred these appeals for hearing made its report, against the acceptance of which the city of Hartford and Newton, one of the appellants, remonstrated. By stipulation the judge reserved the questions arising on the remonstrance for the advice of this court.

We will, in the first instance, consider the questions arising upon the remonstrance of the city and pursued in this court.

Did the committee err in increasing the award of damages to persons who did not appeal? That is determined by the construction to be placed on § 5 of the Act of 1873, amending the charter of the city of Hartford (7 Special Laws, p. 527): "If upon the hearing of any appeal the judge or committee shall find cause to alter said appraisal and assessment, or assessment of benefits only, then said judge or committee shall proceed to reapportion the whole amount of the damages and benefits or benefits only upon the persons or lands specially benefited."

The city contends under this Act that the only awards

of damages which can be changed by the appellate tribunal are the awards to the three appellants, and that if these awards are altered the judge or committee shall reapportion the amounts added to the awards or taken from the assessment of the appellants among owners specially benefited.

The appellant contends that the committee was .right.in interpreting the Act as giving it the power, if it find cause to alter the assessment of the appellants, to make a new assessment, thus reapportioning the whole amount of damages and benefits. Presumably over twenty-seven of those awarded damages were satisfied with the award, and the city was also satisfied, since neither appealed.

If, when three dissatisfied owners appeal—and the same result follows with one owner—the damages awarded all of the owners are subject to review and reappraisement, all owners must take part in the trial on the appeal, be ready to submit evidence, and prosecute their appeal; otherwise each runs the risk of having his award reduced. Likewise the city must be prepared to meet any claim for the increase of awards to any owner. Thus owners who desire to accept the awards made, and the municipality which is ready to pay the awards made, may not accept the judgment of the lower tribunal, and are compelled to enter upon protracted and expensive litigation. Parties who are ready to compose their difficulties are forced to continue legal contest because a single owner has seen fit to appeal from the award made him. Parties whose interests and rights are entirely separate from and independent of the appellant are controlled in their rights and interests by his act.

If, on the appeal of one, the court finds error, a new appraisement must be had, and as each appraisement may be the subject of appeal, it may well be that only

the forbearance or weariness of the litigants will bring the final determination.

A construction which leads to results so at variance with common sense and justice is one which is not at all likely to accord with the intention of the legislature. And, though it were true the letter of the statute would support it, the intention ought to prevail. *Brown's Appeal*, 72 Conn. 148, 150, 44 Atl. 22. No claim under this Act, so far as we are aware, has ever been successfully made that, upon an appeal by one owner, the entire proceeding was open to review and reassessment.

A practical construction placed upon a statute which has been in existence nearly forty years is "high evidence of what the law is." *Mattoon's Appeal*, 79 Conn. 86, 90, 63 Atl. 784. Charters of other municipalities of our State contain substantially similar right of appeal; except in two instances, we are not aware that a claim such as this has ever been pressed to final conclusion.

A statute should be construed, having in view the nature and reason of the remedy and the object of the statute, in order to give effect to the legislative intent.

The purpose of the remedy provided by this Act was to give to any dissatisfied owner, or to the city, a right of appeal. The Act is significant in its omissions. It does not say that if one owner appeal and cause is found to alter the assessment of the appellant the entire assessment is open to review. It provides, in § 2, that "as many of the parties interested as may choose to do so, may join in such appeal." If the intent of the Act had been that all owners were liable to have their assessments changed, and hence were necessary parties to the appeal, other language would have been used.

The judge or committee may alter said appraisal upon the hearing of any appeal; not every award, but the awards which are the subject of the hearing on appeal.

If he do so, his duty is to apportion, to divide and assign in just proportion, the whole amount of the damages and benefits, or benefits only, as found in said appeal.

Before the alteration the damages and benefits balanced; by the alteration they are thrown out of equilibrium, and the gain or loss must be proportionately distributed among those who now are or who were specially benefited. This we esteem to be the meaning and intent of this language. An examination of the charter of Hartford and its amendments corroborates this view. The charter, passed in 1859 (5 Special Laws, p. 321), provided for an appeal to a judge from an assessment for the cost of a public sewer and gave him power "to reassess said damages or benefits and give judgment accordingly."

In *Clapp* v. *Hartford*, 35 Conn. 66, in an appeal from assessments for the construction of a sewer, the claim was advanced that in all cases the expense should be borne by those benefited. The court said of this Act, that while this might be so in the original assessment by the city, it was not so upon appeal. "The obvious import of the charter is, that the appeal carries up, not the whole apportionment, but simply the apportionment to the appellant." And the court states that under the law as it then stood the city was the only appellee, and if a reduction of benefits was made the loss fell upon the city.

To protect the city against such loss, the General Assembly passed a new Act in 1867. 6 Special Laws, pp. 314–316. It provided (§ 4) that "if on any appeal from an assessment of benefits the assessment of the appellant is reduced," the tribunal may "proceed to reapportion the whole of said assessment appealed from among the persons whose property is so·specially benefited thereby, so that no portion of the expense of such

public work shall by reason of said appeal be thrown upon said city."

The purpose of this amendment is found in the last clause of the section. It was not intended, nor did it, give authority on appeal to reapportion the entire assessment, but simply the part appealed from. The Act of 1873 did not intend to change this procedure and permit the appeal to carry up the whole apportionment. Had that been the intent, language conveying such meaning in no uncertain terms would have been used.

In two instances a similar question to that before us has been before the court. *Gilbert* v. *New Haven*, 39 Conn. 467, 472, was an appeal from the assessment of benefits for the widening of a street under § 31 of the charter of New Haven of 1868. 6 Special Laws, p. 487. On such appeal the Superior Court was authorized to "make such order in the premises as equity may require." The appellant offered evidence that the award to another owner was excessive. We held the evidence irrelevant. Neither the city nor another property-owner were interested. And this was necessarily so, since the assessment of damages and benefits were entirely independent proceedings.

An owner whose property is damaged is entitled to be awarded just damages, quite irrespective of damage done another owner, or of special benefits assessed against another owner. Special benefits are the peculiar benefits that accrue to any owner by reason of a public improvement, apart from those common to the general public. They bear no relation to the damages awarded.

In *Roper* v. *New Britain*, 70 Conn. 459, 39 Atl. 850, an owner, Smith, appealed from an assessment of damages and benefits under a charter provision nearly identical with the one under consideration, viz., § 57 of the New Britain charter (10 Special Laws, p. 136):

"If, upon the hearing of any appeal, said judge or committee shall find cause to alter said assessment or said appraisal and assessment, then said judge or committee shall proceed to reassess the whole amount of the damage or cost of construction, or both, upon the persons or land · specially benefited." We held that Smith's appeal could in no way affect Roper's damage.

Aside from these reasons we should regard the following point fatal to the general reassessment of damages and benefits. The Act of 1873 does not provide for notice to owners other than the appellants that on the hearing of the appeal their assessment of damages and benefits will be reviewed. Such notice is indispensable to give the appellate tribunal jurisdiction to make such review. *Stuart* v. *Palmer*, 74 N. Y. 183; *Sears* v. *Street Commissioners*, 173 Mass. 350, 354, 53 N. E. 876; note to *Chicago, M. & St. P. Ry. Co.* v. *Janesville*, 28 L. R. A. (N. S.) 1124, 1201 (137 Wis. 7).

Equally applicable to this case is our observation in *Clapp* v. *Hartford*, 35 Conn. 66, 76: "If the legislature had intended that there should be a general reapportionment upon the appeal, it is fair to presume that provision would have been made for notifying the others interested."

The Act provides for notice by the judge or committee of the pendency of the proceedings, if he shall be of opinion that persons other than those who may be affected by the reapportionment of the assessment to the appellants are among owners specially benefited.

We interpreted a charter ·provision similar to this to mean, "Not until the appellate tribunal has found cause to alter the assessment or appraisal of some of the appellants . . . so that a reapportionment of the expense, among those specially benefited is required, can the plaintiff and other persons interested be made parties to the proceeding. . . . They are then made

parties that they may be heard upon such reapportionment of the expense, and for no other purpose." *Roper* v. *New Britain*, 70 Conn. 459, 465, 39 Atl. 850.

Under the Act of 1873, the course for the appellate tribunal is, first, to find cause to alter the award of the appellants, and then to give notice to owners liable to have the assessment apportioned among them. A notice of apportionment of the assessments of appellants has no relation to a review of the assessments of other owners than the appellant.

The subject-matter of the grievance of the appellant is all that the judge on appeal has jurisdiction over. When the Act fails to provide notice to owners of a general review of their assessments, a judge or committee on appeal cannot supply the omission. Hamilton on Law of Special Assessments, §§ 143, 145. The absence of provision for notice is the best of evidence that the legislature did not intend a general reassessment to be had upon an appeal by one or more owners. Jurisdiction over assessments to owners other than appellants could not be given without notice to them; the statute provides no notice; the judge or committee cannot acquire jurisdiction by giving such notice. In fact, in this case the notice given was not a notice that a general reassessment was intended. We think the committee was without power to change the assessments of owners who did not appeal, in an action by an owner who did appeal. It could only reapportion the gain or loss to the appellants among owners specially benefited in the amount of the whole or a part of such gain or loss.

A further error assigned in the remonstrance of the city is, whether benefits to owners who did not appeal can be changed except to apportion among those specially benefited the gain or loss in assessment to the appellants. Our discussion upon the right, under

such circumstances, to increase the damages of owners other than the appellants has included this particular error, and the considerations which uphold the construction of the Act of 1873, as evincing a legislative intent forbidding a general reassessment of damages, equally support the conclusion that the legislative intent did not include a general reassessment of benefits. Benefits and damages are distinct and separable elements. The subject-matter of the appeal has no relation to a review of benefits assessed to other owners. The notice provided gave the committee jurisdiction over owners who had been specially benefited, and among whom might be apportioned the gain or loss. from the change in assessment of the appellants.

The practical considerations against a construction leading to a general review of damages awarded, in an appeal by one or more owners, are strengthened in the case of a general review of the benefits by the fact that the increased damages awarded the appellants will have been made when the owners whose benefits it is purposed to reassess were not parties to the appeal.

The committee was without authority to alter benefits, except to reapportion among those specially benefited the changes made by the committee in the amounts payable to the appellants, or in the amounts to be assessed against the appellants.

In another particular the committee reached an erroneous conclusion. It reapportioned the benefits and damages as of the date of its report, instead of the date of assessment of benefits and damages by the board of street commissioners. A public improvement is begun at one time; the appraisement must be of one date. Values fluctuate. If the date of appraisement of the board should hold for those not appealing, and the committee's report for those appealing, serious inequality in determining values might result. If the

date of the committee's report was to be taken, it would be necessary to have an entire reappraisement, for only in that way could an equal appraisement be made. We have construed this Act as forbidding this.

In *Shannahan* v. *Waterbury*, 63 Conn. 420, 28 Atl. 611, and *Roper* v. *New Britain*, 70 Conn. 459, 39 Atl. 850, the damages under the charters then construed were assessed as of the date of taking, and this was not postponed pending appeal. In the charter before us (8 Special Laws, p. 111, § 1) the layout is not made, nor the taking had, until damages and benefits have been finally determined, either by the board or by the appellate tribunal. So that the taking cannot control the date of assessment. The board cannot appraise as of that time, for it is an unknown date; the appellate tribunal cannot appraise as of this date, otherwise it must reassess all benefits and damages, and this is beyond its jurisdiction. No injustice will result from taking the earlier date.

The great majority of owners do not appeal; their assessments stand undisturbed, requiring no protection from them; the few who appeal will find no difficulty in showing the error of the assessment as of the date of the board's report; the appellate tribunal will have less difficulty in the comparison of values of that date, rather than of that date with the date of its report, and be more likely 'to reach a just determination. Such a rule works equality for all. In these particulars the remonstrance of the city is well taken.

The remonstrance of the appellant Newton is confined to three rulings excluding evidence of the cost of curb and walks and of sprinkling the street adjacent to his premises. The contention of the appellant is that the layout of the street has made his a corner lot, and will subject him to the burden of laying a curb and walk and sprinkling the street. That a walk or curb may

in the future be required to be laid was no present element of damages to the lot. When the time arises when these may be ordered, it will be done by authority of law, and presumptively benefit the appellant at least its cost. The evidence offered was irrelevant and immaterial. *Lewis* v. *New Britain*, 52 Conn. 568, directly sustains this ruling. Compulsory laying of walks and curbs has been upheld as an exercise of the police power. The cost of sprinkling comes under the same head. *Meriden* v. *West Meriden Cemetery Asso.*, 83 Conn. 204, 206, 207, 76 Atl. 515; *Goddard, Petitioner*, 16 Pick. (Mass.) 504, 510. We think the rulings of the committee clearly sustained by reason and authority.

We advise the judge of the Court of Common Pleas in Hartford County to sustain the remonstrance of the city for the reasons herein stated, and to overrule the remonstrance of the appellant Newton.

In this opinion the other judges concurred.