Argued April 23, decided May 14, rehearing denied June 4, 1912.

## CLARK v. CITY OF PORTLAND.

[123 Pac. 708.]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ASSESSMENTS—TIME FOR ENFORCING.

1. Under Section 351, Portland City Charter, providing that the owner or owners of any lot to be appropriated in street opening proceedings, or of the improvements or an interest therein, or any person against whom an assessment of benefits has been made, may appeal, and that any number of persons may join in such appeal, and section 358, providing that, unless the assessments of benefits shall be collected and warrants drawn and ready for delivery for the excess of damages over benefits within nine months after the time to appeal expires, or, if an appeal is taken, after the rendition of the final judgment on appeal, the proceeding shall be null and void, the proceeding, including the appeal, is a separate one against each owner, and not a joint proceeding against all those concerned; and hence, where an owner appeals to the circuit court and takes no further appeal, if the warrants are not drawn ready for delivery within nine months after the expiration of his time to appeal from the judgment of the circuit court, he may enjoin the collection of his assessment, although the warrants are ready within nine months after the expiration of the time to appeal of other parties, who appealed separately to the circuit court, especially in view of the provisions of sections 357 and 358, under which the city, even after judgment on appeal, may abandon the proceeding and refuse to appropriate the property sought to be taken.

EMINENT DOMAIN—STATUTES—CONSTRUCTION.

2. Statutes authorizing condemnation of private property, being in derogation of vested rights, must be strictly construed.

MUNICIPAL CORPORATIONS—RELIEF—AWARD OF DAMAGES.

3. In a proceeding to enjoin the collection of an assessment of benefits in a street opening proceeding for delay in appropriating the property beyond the statutory period, plaintiff cannot recover damages to his property, caused by the pendency of the proceeding, but must proceed at law.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by John Clark against the city of Portland to recover the value of certain property appro-

priated by the city in extending and widening certain streets.

In the exercise of its charter power to lay out, open, and establish streets, the council of the city of Portland causes the city engineer to survey and plat the proposed street and report a full description of it and of each parcel of land to be appropriated for the purpose. The report of the engineer having been adopted by the council by ordinance, the viewers are then appointed by that body, and notice of the time and place of their meeting is published in the city official newspaper for 10 days and sent by mail to each person, or his agent, whose property is to be appropriated for the contemplated street. At the time and place appointed, the viewers assess the damages that will accrue to the owners of the condemned property, as well as the value of benefits that will inure to such owners, by the establishment of the proposed street, as well as to other persons interested in property which the viewers deem will be specially benefited by the project. The viewers are required, at their earliest convenience, to report to the council their adjustment of damages and benefits. Provisions are made in the charter for giving to all persons affected notice of when the report will be considered by the council. That body may adopt the report by an ordinance, or recommit the matter to the same or other viewers; but, having passed the ordinance of approval, the procedure is ripe for appeal. Portland charter of January 23, 1903, §§ 347-350.

Section 351. The owner or owners of any lot or part thereof so to be appropriated as aforesaid, or of the improvements thereon, or any person having an interest therein, or any person against whom an assessment of benefits has been made, may appeal to the circuit court of the State of Oregon, for the county of Multnomah, from such report and assessment of damages and benefits. Any number of persons may join in such

appeal, and the only question to be determined by such appeal shall be the question of the excess of damages over benefits and the excess of benefits over damages suffered and received by each person joining in such appeal."

Section 352 requires that an appeal shall be taken by serving notice thereof upon the mayor, auditor, or attorney of the city within 20 days from the adoption of the viewers' report and filing an undertaking with sureties, "conditioned that the appellant will pay all costs and disbursements that may be awarded against him on appeal not exceeding $300, together with the proof of service of such notice in the office of the clerk of the circuit court."

"Section 353. The city shall be considered the plaintiff, and such appeal shall be conducted and be heard and determined, and the judgment thereon enforced, as far as practicable, in the same manner as an action at law. The jury shall view the proposed street, the property to be appropriated, and the property against which benefits are assessed, and evidence of damages and benefits may be introduced by the city and the appellants, but the issues, testimony and verdict upon such appeal shall be confined to the parties appealing, and the jury shall not reassess any damages or benefits unappealed from. The jury, in making the reassessment of damages or benefits, shall, in its apportionment of the same be governed by the same laws as in this charter provided for the action of viewers. The verdict of the jury shall be a final and conclusive determination of such assessment, unless the judgment rendered in such case shall be reversed or modified on appeal. An appeal to the Supreme Court of the State may be taken from such judgment in the same manner as from other judgments of said circuit court and with like effect. On an appeal from the report and assessment of damages and benefits the fact that one called as juror is a taxpayer of the city of Portland shall not disqualify him from sitting as such juror.

"Section 354. If any appellant fails to recover greater damages or to secure a more favorable assessment of

benefits, as the case may be, than were assessed by the viewers, judgment shall be rendered against him and his sureties on appeal for his proportion of the costs of such appeal to be paid pro rata according to the respective amounts, of damages and benefits assessed.

"Section 357. The council at the expiration of the time limited for appeal, if no appeal be taken, or immediately after judgment is rendered on appeal, if an appeal be taken, and if it shall deem it advisable to open, lay out, establish or change said street, in pursuance of said judgment, shall by resolution direct the auditor to enter in the docket of city liens the respective sums of benefits over damages so assessed, upon each particular lot or parcel of land, and the names of the owners or other parties in interest in the lands or other property benefited and assessed in like manner as assessments for street improvements are entered in said lien docket, * * and in case no appeal or other proceedings in court be taken as to any such assessment of benefit or damages, the said excess so assessed shall be paid to the treasurer of the city of Portland within ten days from the time of entering the same on the docket of city liens, or the same shall be deemed delinquent. * * All moneys arising from such assessment of benefits shall be kept in a separate fund and be applicable to the satisfaction of the excess of damages over benefits assessed to owners and other persons interested in the property taken or damaged for the purpose of laying out, establishing or changing the street in the matter in which such benefits are assessed and for the payment of expenses incurred by the city for surveying, advertising and viewers in said proceedings.

"Section 358. Whenever the full amount of the assessment of benefits as entered in the docket of city liens is paid into the city treasury, warrants shall be drawn upon the treasurer, payable out of the fund to be provided for that purpose, for the amount of the excess of damages and costs assessed, and in favor of the owner or owners, or other persons in interest, and when said warrants therefor are drawn and ready for delivery to the parties entitled to the same, such property shall be deemed appropriated for the purpose of such street, and not otherwise; *provided,* that no process of any court shall

issue to compel any appropriation for damages or the issuing of warrants for the same. And unless such assessments are collected, and said warrants so drawn and ready for delivery within nine months after the termination of the time limited for appeal, if no appeal be taken, or within nine months from the date of the rendition of final judgment on appeal, if an appeal be taken, all acts and proceedings under such survey and view shall be null and void. * *"

Acting under these provisions of its charter, the council of the city of Portland undertook the prolongation of Oak street from its original western terminus at Park street to an intersection with Burnside street still further in that direction. The proceedings reached a point where, over the objection of the plaintiff in this suit, the council, on September 8, 1909, passed an ordinance adopting the report of the viewers, which enactment was approved by the mayor September 14, 1909. The project involved taking from plaintiff all of lot 3 and the south 10 feet of lot 2, in block 86, and left him the north 40 feet of lot 2. The viewers assessed his total damage at $59,500, but determined that his remaining property would be benefited in the sum of $18,000.

The plaintiff appealed to the circuit court, where the jury fixed his damages at the same sum of $59,500, but reduced his apportionment of benefits to $16,000. Meanwhile two other separate appeals had been taken by parties whose property was involved, one by way of damages and the other as to benefits, in the same scheme of street extension. One of these appeals was determined in the circuit court November 8, 1909. Plaintiff's appeal reached judgment there February 2, 1910, and the third was not concluded until June 8, 1911. On June 28, 1911, the council, by resolution, directed the auditor to make on the docket of city liens the entries required by Section 357, *supra,* and on July 21st of that year the plaintiff instituted this suit to enjoin the city from opening Oak

street over his property, and from attempting to collect from him the $16,000 benefits assessed by the jury against his property remaining after the street should be opened, as well as to recover damages from the city for loss of rents of some houses on his lots, and the like, occasioned, as he says, by the doings of the city in the matter.

After traversing the complaint in material particulars the defendant detailed the proceedings mentioned with somewhat greater particularity, especially as to the other appeals, and claimed that it could not proceed until after the last appeal was determined on June 8, 1911. The reply joined issue on sundry essential allegations of the answer, and after a hearing the circuit court entered a decree, dismissing the suit, from which plaintiff appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. John H. Hall* and *Mr. Jesse Stearns,* with an oral argument by *Mr. Hall.*

For respondent there was a brief with oral arguments by *Mr. Frank S. Grant,* City Attorney, and *Mr. H. M. Tomlinson,* Deputy City Attorney.

There was also a brief over the names of *Mr. William D. Fenton* and *Mr. Alfred P. Dobson, Amicus Curiae,* with an oral argument by *Mr. Fenton.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The crux of the litigation here lies in the construction to be given to section 358 of the charter in the computation of the nine-month period within which the city must collect the assessments and draw its warrants in settlement of damages and costs, under pain of rendering void its whole proceeding to open the street. The time within which an appeal could have been taken from the judgment of the circuit court began to run from

Sig. 5

February 2, 1910, the date of its rendition, and expired on August 2d of that year. Section 550, subd. 5, L. O. L. Plaintiff, not having appealed, maintains that, so far as he is concerned, the term of nine months referred to began to run at the latter date, and expired May 2, 1911. On the other hand, the defendant contends that, even as against the plaintiff here, the calculation of the nine months is controlled by the termination of all the appeals by whomsoever taken in the proceeding to open the street, so that the city had until that length of time after the right to appeal had lapsed in the last case in which to collect the assessments and draw the warrants and thus complete the appropriation of the property.

In extending a street under the procedure required by its charter, the city develops at least two classes of opponents with whom it must reckon; one consisting of those who suffer damage by the taking of the land included in the new street, and the other comprising those upon whose holdings are assessed the benefits supposed to result from the enterprise. These two classes are adverse to each other in interest. The individual in the first class will naturally be concerned in getting as much as possible for his land; while the man of the other class will strive to lighten, not only the burden of his assessment for benefits, but also that of his general taxation for any amount the city may pay directly in the condemnation of the land.

In prescribing who may appeal the charter recognizes not only these adverse interests, but also the separate appeal of the individual. Section 351 says:

"The owner (singular) or owners of any lot or part thereof so to be appropriated as aforesaid, or of the improvements thereon or any person having an interest therein or any person against whom an assessment of benefits has been made may appeal."

In the very inception of the project, the viewers are rquired to segregate individual interests by assessing damages in favor of the respective owners whose property is taken and benefits to those whose property is enhanced in value. That the proceeding to open a street, including the incident of appeal, is not one jointly against all those concerned is further shown by the fact that in the circuit court .the jury is forbidden to reassess any damages not appealed from. The undertaking of the appellant is conditioned for the payment of the costs and disbursements that may be awarded against him alone, and not jointly with another; and they are made to depend upon whether he obtains a more favorable result or not on appeal. While the enterprise may be single in the respect that it contemplates the opening of but one street, yet, in the prosecution of the undertaking, the city is perforce compelled to deal with the individual as such. True enough it is said that any number of persons may join in an appeal; but the natural import of that language renders it applicable only to those who have interests alike or in common, and then only permissively. It would be a strained construction which would require an appellant to join with one or many interested in defeating his appeal or lessening the compensation he would receive for his land. Moreover, in this particular proceeding, instead of moving to consolidate the appeals as it ought, if the theory of its counsel is correct, the city litigated the three appeals separately, and ought not afterwards to be allowed to mend its hold, so as to make the rights of the present plaintiff depend upon the actions of those with whom he has no interest in common. The conclusion is that, not only by the terms of the charter, but also in sound reason, in the procedure involved, it is a question between the city and each individual as adverse parties litigant; and the rights of the single property holder are not to be affected by the litigation of

others, unless he chooses to join with them on appeal. The proceeding is inaugurated against individuals to affect the holding of each in severalty. There is no point throughout the course where this attitude changes; and the matter must logically be carried to its legitimate conclusion as one operating against each individual, unaffected by others holding diverse or adverse interests.

Great reliance is put in the case of *Shannahan* v. *City of Waterbury*, 63 Conn. 420 (28 Atl. 611), by the defendant as sustaining its position here that all persons affected by the proposed street extension are joint parties in one proceeding, so that the city may finish its litigation with all of them before being concluded as to any of them by the nine-month limitation mentioned. That case is distinguishable from the one at bar in these material particulars: The charter there in express words postpones the opening of the street "until all applications * * for relief against acts done in reference to the laying out of such public improvements shall be finally disposed of by said superior court"; while such language is not found in the Portland charter. Again, the Waterbury charter provided "that in case of any appeal being made from the doings of the board of compensation * * in making any assessment of damages or benefits, * * and no appeal is taken from the lay-out, nothing in said charter shall be construed to prevent said city from opening, occupying and working the same during the pendency of the appeal from the doings of said board." It seems that the city there was authorized to take the property first and pay afterwards; while our constitution requires the compensation to be first assessed and tendered (Constitution, Article I, § 18), or at least secured, when the taker is a corporation. Constitution, Article XI, § 4. Still further, in that case, the court held that the city had no option to abandon the improvement after the assessment of damages on appeal; while here, as we shall

presently point out, the city retains the option to appropriate or not, even until the warrants are drawn to pay the assessed damages. In addition to *State* v. *Board of Park Commissioners*, 33 Minn. 524 (24 N. W. 187), cited by plaintiff, the case of *Stipp* v. *Claman*, 123 Ind. 532 (24 N. E. 131), is instructive on this point.

There is some testimony in the record and much has been said about the great increase in the value of plaintiff's property since the inauguration of the proceeding to condemn it. This, however, in our opinion, is not necessarily involved here. It furnishes a convenient reason for plaintiff's suit, for, if Portland's phenomenal progress had suddenly ceased, with a consequent slump in prices of realty, he might not be here complaining; but, so far as value is concerned, in this case, it was fixed by the condemnation proceedings. When the city would acquire property for public use by the exercise of the right of eminent domain, it is impracticable to settle upon the compensation in a day, especially if litigation becomes necessary. In the very nature of things, the process should be flexible enough to permit of its practical application. In discussing proceedings of this nature in *State Park Commissioners* v. *Henry*, 38 Minn. 266 (36 N. W. 874), the court there said:

"A reasonable opportunity may be given to abandon the proceedings, or reject the offer, if the price be found to be such as to render it inexpedient to go on with the projected enterprise. And where the property is taken directly by the State or a municipal corporation, the fact that payment is postponed for a reasonable time to make an assessment and collect a tax to pay the amount ascertained, or to enable the legislature to decide finally, or make an appropriation, does not make a law authorizing condemnation proceedings unconstitutional."

In respect to the condemnation of the land, the object to be attained by the viewers in the first instance and

by the appeal afterwards is to fix the price at which the city may, at its option, acquire the property or decline it. By positive terms, as late as the judgment on appeal, the option is yet with the city; for section 357 empowers the council at that stage to authorize the entry of the benefit assessments upon the lien docket, "if it shall deem it advisable to open, lay out, establish or change said street in pursuance of said judgment." Negatively the option is shown to be still with the city under section 358, although the assessments have been collected; for while the opening clause says that warrants shall be drawn to pay damages for taking the property whenever the full amount of the assessments is collected, yet in the same section it is "provided that no process of any court shall issue to compel any appropriation for damages or the issuing of warrants for the same." The terms of that and the following section expressly fix the appropriation of the property at the time when the warrants are drawn and ready for delivery.

The price having been fixed on appeal, the question then is, How long does the option of the city continue to take the property or leave it? The charter answers it in the conclusion of section 358:

"And unless such assessments are collected, and said warrants so drawn and ready for delivery within nine months after the termination of the time limited for appeal, if no appeal be taken, or within nine months from the date of the rendition of final judgment on appeal, if an appeal be taken, all acts and proceedings under such survey and view shall be null and void."

This provision is a fixed boundary, beyond which the city cannot pursue the individual and virtually sequester his property *pendente lite*. It is a protection to the single owner with whom, we have seen, the city must deal. This plain provision is not overcome by the earlier clause of the section, saying that the warrants shall be drawn

whenever the full amounts of the assessments are col-
lected, because the property holder is expressly denied
the right to compel the issuance of the warrant or the
appropriation of money to pay his damages. As he can-
not enforce the assessment of his damages, his only
resource is in the nine-month limitation, which warns the
city from the beginning as to the measure of diligence it
must exercise in the pursuit of its remedy. In subordina-
tion to the power of eminent domain vested in the munici-
pality, the property holder, in a regular proceeding, is
compelled to sell his land to it at the ascertained price,
whether he is willing or not. But the city cannot sleep
on its right to buy. Its option does not continue
indefinitely. For a time, it may say to the householder:
"You must sell to me your holding at such a price. Here
is the warrant on my treasurer for the money. I have
appropriated your land. Vacate the premises." The
charter, however, has imposed restraint on this *quasi* arbi-
trary power. There are many decisions where courts
have dismissed such proceedings, independent of any
statute, because the option was not exercised in a reason-
able time. In this instance, though, there comes a day,
foretold by the municipal constitution, declaratory in
terms of what is such reasonable time, when the private
owner may answer the city, and say, "I decline your
offer to buy at the price named." It may be that the
nine months mentioned is too brief for the purpose; but
that is a legislative question with which courts have
nothing to do.

2. It is argued that, if plaintiff is sustained in this
suit, it will be impossible for the city to open any street,
because it cannot be expected that all the property hold-
ers will agree to it on the terms fixed by the viewers.
On the other hand, to uphold the city in its contention
would be to sanction a Fabian policy that would embar-
rass the freeholder indefinitely in the enjoyment and

management of his property. If the public interest requires it, the legal voters of the municipality have power, under Section 2, Article XI, of the State Constitution, to amend the charter and devise a less cumbersome and more practical procedure, subject to constitutional guaranties in favor of owners. The individual, however, has no such power. He must endure what the statute visits upon him, if constitutional; but he is entitled to rely upon its provisions which are in his favor on the principle that statutes authorizing condemnation of private property must be strictly construed, being in derogation of vested rights of the citizen.

3. The delay in winding up the affair until after the lapse of the statutory period renders the condemnatory proceeding void, at least as against the plaintiff. He is entitled to enjoin the destruction of his estate, when attempted under a void proceeding. If the title to his property has been, so to speak, slandered or his enjoyment of it impaired to his hurt by the abortive action of the city, the law courts are open to him for a redress of his grievances.

It follows that the decree of the circuit court is reversed, and one here entered, enjoining the defendant from taking plaintiff's property under the proceedings mentioned in the pleadings, and for costs and disbursements, but without damages.          REVERSED.